UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BOARD OF TRUSTEES OF THE SOUTHERN NEVADA JOINT MANAGEMENT AND CULINARY AND BARTENDERS TRAINING FUND,<br><br>Plaintiff(s),<br><br>v.<br><br>CHRISTOPHER FAVA, et al.,<br><br>Defendant(s). | Case No. 2:18-CV-36 JCM (CWH)<br><br>ORDER |

Presently before the court is defendant Federal Insurance Company's ("Federal") motion to dismiss. (ECF No. 29). Plaintiff Culinary Academy of Las Vegas ("CALV") filed a response (ECF No. 42), to which Federal replied (ECF No. 46).

**I.      Facts**

This case involves an insurance coverage dispute related to a claim involving two former CALV employees' alleged breaches of their fiduciary duty.

In January of 2012, CALV hired Christopher Fava as vice president of food and beverage and chief operating officer, and later as its chief executive officer. (ECF No. 1). CALV is a Nevada nonprofit employee benefit trust fund and is a provider of training for entry-level and incumbent workers in the Las Vegas hospitality industry. *Id.* Fava's position involved overseeing and managing CALV's assets and expenditures. *Id.*

In April of 2015, Jaime Monardes joined CALV as vice president of finance and accounting. *Id.* Monardes was responsible for oversight of program operations, including the expenditure and use of CALV's assets. *Id.*

On January 19, 2016, Fava and Monardes entered into an allegedly impermissible transaction with the Eclipse Theater LLC ("Eclipse Theater"). *Id.*

CALV maintained a policy of fiduciary liability insurance ("the policy") with Federal. *Id.* Fava and Monardes were insureds under the policy because of their employment at CALV and their actions as functional fiduciaries of CALV. *Id.*

On December 19, 2016, CALV notified Federal of potential prohibited transactions incurred by Fava and Monardes and requested a coverage determination. *Id.* On December 21, 2016, Federal told CALV it would conduct an investigation and evaluation for possible coverage. *Id.* During phone calls between CALV and Federal, Federal indicated it did not believe CALV could make a claim against Fava and Monardes because all parties were insured under the policy. *Id.*

On June 22, 2017, CALV filed a formal claim on the Federal policy, including details of its claims against Fava and Monardes. *Id.* On July 12, 2017, Federal responded to CALV and stated that no claim had been made because no third party asserted liability. *Id.*

On August 4, 2017, Federal wrote to CALV and stated that it had not received CALV's claim against Fava and Monardes. *Id.* On August 14, 2017, CALV sent Federal a copy of its latest claims against Fava and Monardes. *Id.*

On August 16, 2017, Federal wrote to CALV and said it would wait for Fava and Monardes to ask Federal for coverage. *Id.* On August 22, 2017, CALV replied to Federal and pointed out that the policy did not require that Fava and Monardes invoke coverage. *Id.*

On August 28, 2017, CALV wrote to Federal demanding payment under the policy and noting that Federal had not articulated any basis for denying its claim. *Id.* On September 1, 2017, Federal refused to discuss the matter further with CALV. *Id.*

On January 9, 2018, CALV filed the underlying complaint asserting fourteen claims for relief against several individual and entity defendants. *Id.* In the instant motion, Federal moves to dismiss the two state law claims CALV asserts against it. (ECF No. 29).

. . .

. . .

James C. Mahan
U.S. District Judge

- 2 -

## II. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that

are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

CALV asserts two claims for relief against Federal: (1) breach of contract and (2) bad faith for refusing to pay on its insurance claim. The court will analyze the claims separately.

#### a. Breach of contract

Under Nevada law, breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987). A claim for breach of contract requires that a plaintiff demonstrate the following elements: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages as a result of the breach. *Cohen-Breen v. Gray TV Grp., Inc.*, 661 F. Supp. 2d 1158, 1171 (D. Nev. 2009).

Here, the parties do not dispute the validity of the policy.[1] Accordingly, the court will determine whether Federal breached. *See Cohen-Breen*, 661 F. Supp. 2d. at 1171 (D. Nev. 2009).

##### 1. Breach

CALV contends that it "made a claim on Federal for payment on the losses caused by Fava and Monardes' wrongful acts." (ECF No. 1 at 25). CALV alleges that "Federal failed to pay the claim, in breach of the terms of the policy." *Id.* CALV argues that it is entitled to relief as either (a) a claimant attempting to recover from Fava and Monardes or (b) as an insured party attempting to recover under the policy. *See* (ECF No. 42).

###### i. Claimant

CALV, as a claimant against Fava and Monardes, argues that Federal breached the policy by failing to pay its claim. *See id.* Federal contends that Nevada's bar against direct actions prohibits CALV's recovery. (ECF No. 29).

---

[1] CALV did not include the insurance policy in its complaint. *See* (ECF No. 1). However, Federal attached the policy as an exhibit and CALV's claims against Federal are based on the policy. (ECF No. 29, Ex. A). Accordingly, the court will consider the policy. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1039 (9th Cir. 2010) (holding that on a motion to dismiss, a court may consider documents outside the complaint when the contents of the document are alleged in the complaint, the document's authenticity is not in question, and there are no disputed issues as to the document's relevance); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Under Nevada law, relief between a third party claimant and an insurer is proper only after the third party obtains a final judgment against the insured wrongdoer.[2] *Knittle v. Progressive Cas. Ins. Co.*, 908 P.2d 724, 726 (Nev. 1996). The rights of a third party claimant against an alleged wrongdoer's insurer do not mature until the claimant obtains a judgment against the wrongdoer. *Roberts v. Farmers Ins. Co.*, 533 P.2d 158, 159 (Nev. 1975).

Therefore, a plaintiff has "no legally protectable interest" until he establishes liability of the insured wrongdoer. *See Knittle*, 908 P.2d at 725-26. Prior to obtaining judgment against the wrongdoer, plaintiff's rights against the wrongdoer's insurer are not ripe for relief. *Id.* at 726.

Here, CALV, as a third party claimant, cannot sue Federal before obtaining judgment against Fava and Monardes.[3] *See Roberts*, 533 P.2d at 159. Accordingly, plaintiff is not entitled to relief as a claimant. *See Knittle*, 908 P.2d at 725-26.

### ii. Insured

CALV argues that it asserted a claim in its capacity as an insured party under the policy. (ECF No. 42). CALV alleges that Federal breached the policy by failing to pay the claim. *Id.* Federal contends that CALV's recovery is barred by the policy's terms. (ECF No. 29).

"The interpretation of a contract when the facts are not in dispute is a question of law." *Musser v. Bank of Am.*, 964 P.2d 51, 52 (Nev. 1999). Moreover, whether a contract is ambiguous presents a question of law. *See Margrave v. Dermody Props.*, 878 P.2d 291, 293 (Nev. 1994).

"The question of whether an insurance contract is ambiguous turns on whether it creates a reasonable expectation of coverage as drafted." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1157 (Nev. 2004). A contract is ambiguous if it is susceptible to more than one interpretation. *See Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007). However,

---

[2] A third party claimant is a plaintiff who attempts to recover from an insurer prior to obtaining final judgment against the insured party. *See Vignola v. Gillman*, 804 F. Supp. 2d 1072, 1077 (D. Nev. 2011).

[3] The policy defines insured as "(a) trust or plans; (b) natural persons serving as a past, present, or future trustee or employee of a trust or plan; and (c) other natural person or organization designated as an additional insured by endorsement to this policy." (ECF No. 29, Ex. A). Therefore, Fava and Monardes are insured by Federal under the policy because they are former CALV employees. *See id.*; *see also* (ECF No. 1).

"ambiguity does not arise simply because the parties disagree on how to interpret their contract." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013).

If a provision in an insurance contract is unambiguous, the court will interpret and enforce it according to the plain and ordinary meaning of its terms. *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011). The court is "not free to modify or vary the terms of an unambiguous agreement." *All Star Bonding v. State*, 62 P.3d 1124, 1126 (Nev. 2003).

Here, Federal contends that the policy's no action clause bars CALV's direct action against Federal.[4] (ECF No. 29). The no action clause states that:

> No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. No person shall have the right under this policy to join the company as a party to any action against the insured to determine the insured's liability nor shall the company be impleaded by the insured or the insured's legal representatives.

(ECF No. 29, Ex. A).

Additionally, the policy defines insured as "(a) trust or plans; (b) natural persons serving as a past, present, or future trustee or employee of a trust or plan; and (c) other natural person or organization designated as an additional insured by endorsement to this policy." *Id.*

In its response, CALV contends that it satisfied the requirements of the no action clause and offers two arguments to support its assertion. (ECF No. 42). First, CALV asserts that "judgment is not required prior to suit against the insurer." *Id.* at 8. Second, CALV argues that "the insureds are not impleading the insurer here." *Id.* at 10. CALV does not allege that the no action clause is ambiguous. *See* (ECF Nos. 1, 42).

CALV's arguments are unpersuasive because they fail to address the crucial phrase in the no action clause – "no person shall have the right under this policy to join the company as a party to any action against the insured to determine the insured's liability." *See* (ECF No. 29, Ex. A). CALV's first argument does not address compliance with the no action clause. CALV's second

---

[4] The Ninth Circuit has held that no action clauses are intended to prevent "(1) actions against the insurer for money judgment by the injured party until the damages have been fixed by final judgment or agreed settlement; (2) nuisance suits against the insurance company; and (3) an injured party or an insured from bringing the insurance company into the underlying litigation with possible resultant prejudice." *Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co.*, 873 F.3d 229, 233 (9th Cir. 1989).

James C. Mahan
U.S. District Judge

argument is unavailing because the no action clause is not limited to impleader as CALV suggests.[5] *See* (ECF No. 29, Ex. A).

Because the no action clause is unambiguous, the court will enforce it according to the plain meaning of its terms. *See Powell*, 252 P.3d at 672. The plain language of the no action clause, when viewed in conjunction with the definition of insured, prohibits CALV from joining Federal in "any action against the insured to determine the insured's liability." *See* (ECF No. 27, Ex. A). Further, Fava and Monardes are insured by Federal under the policy because they are former CALV employees. *See* (ECF No. 1); *see also* (ECF No. 27, Ex. A).

In its complaint, CALV asserts several ERISA claims against Fava and Monardes in addition to two state law claims against Federal. (ECF No. 1). Therefore, CALV is attempting to join Federal in an action against Fava and Monardes to determine the insured's liability. *See id.*; *see also* (ECF No. 27, Ex. A). Accordingly, CALV's recovery under the policy is precluded by the no action clause. *See Musser*, 964 P.2d at 52.

**b. Bad faith**

CALV contends that it is entitled to relief because "Federal denied and refused to pay on CALV's claim." (ECF No. 1 at 26). CALV argues that it can recover as either (a) a claimant attempting to recover from Fava and Monardes or (b) as an insured party attempting to recover under the policy. (ECF No. 42).

**1. Claimant**

In Nevada, "liability for bad faith is strictly tied to the implied covenant of good faith and fair dealing arising out of an underlying contractual relationship." *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 197 (Nev. 1989) (citing *Kmart Corp. v. Ponsock*, 732 P.2d 1335, 1336 (Nev. 1987)). When no contractual relationship exists, no recovery for bad faith is allowed. *Id.*

Here, CALV, as a claimant against Fava and Monardes, seeks to recover from Federal. *See* (ECF No. 1). CALV is attempting to recover from Federal as an injured third party. *See id.*

---

[5] The no action clause states that "no person shall have the right under this policy to join the company as a party to any action . . . nor shall the company be impleaded by the insured." (ECF No. 27, Ex. A).

Therefore, CALV is not suing as a policyholder. *See id.* Accordingly, CALV is not entitled to relief because no contractual relationship exists. *See United Fire Ins. Co.*, 780 P.2d at 197.

### 2. Insured

Under Nevada law, a plaintiff asserting a bad faith claim must show: "(1) an insurer's denial (or refusal to pay) an insured's claim; (2) without any reasonable basis; and (3) the insurer's knowledge or awareness of the lack of any reasonable basis to deny coverage." Moreover, if a plaintiff does not prevail on its breach of contract claim, there can be no basis for concluding that the defendant acted in bad faith. *See American Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986).

Here, because the court concludes that Federal did not breach the policy, CALV is not entitled to relief on its bad faith claim. *See American Excess Ins. Co.*, 729 P.2d at 1354.

## IV. Conclusion

Consistent with the foregoing, the court will dismiss CALV's breach of contract and bad faith claims without prejudice.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Federal's motion to dismiss (ECF No. 29) be, and the same hereby is, GRANTED.

DATED July 2, 2018.

_____
UNITED STATES DISTRICT JUDGE