1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BOARD OF TRUSTEES OF THE
SOUTHERN NEVADA JOINT
MANAGEMENT AND CULINARY AND
BARTENDERS TRAINING FUND,

Plaintiff(s),

v.

CHRISTOPHER FAVA, et al.,

Defendant(s).

Case No. 2:18-CV-36 JCM (DJA)

ORDER

Presently before the court is plaintiff Board of Trustees of the Southern Nevada Joint Management and Culinary and Bartenders Training Fund d/b/a Culinary Academy of Las Vegas's ("CALV") motion for partial summary judgment. (ECF No. 121). Defendant Christopher Fava ("Fava") filed a response (ECF No. 130), as did defendant Jaime Monardes ("Monardes") (ECF No. 132). CALV did not reply, and the time to do so has passed.

Also before the court is Monardes's motion for partial summary judgment. (ECF No. 122). CALV filed a response (ECF No. 138), to which Monardes replied (ECF No. 154).

Also before the court is Fava's motion for summary judgment. (ECF No. 123). CALV filed a response (ECF No. 139), to which Fava replied (ECF No. 153).

Also before the court is CALV's motion for summary judgment against Fava. (ECF No. 124). Fava filed a response (ECF No. 141), to which CALV replied (ECF Nos. 144; 151).

Also before the court is Fava's motion to strike CALV's motion for summary judgment against him. (ECF No. 129). CALV filed a response (ECF No. 142), to which Fava replied (ECF No. 148).

James C. Mahan
U.S. District Judge

1    Also before the court is CALV's motion for summary judgment against Monardes.  (ECF

2    No. 125).  Monardes filed a response (ECF No. 137), to which CALV replied (ECF Nos. 145;

3    152).

4    Also before the court is CALV's motion for leave to supplement its motion for summary

5    judgment against Monardes.  (ECF No. 161).

6    Also before the court is Monardes's objection (ECF No. 163) to Magistrate Judge

7    Albregts's ("Judge Albregts") minute order (ECF No. 160).  CALV filed a response (ECF No.

8    164), to which Monardes replied (ECF No. 165).

9    Because Monardes did not seek leave of the court, CALV moves to strike his reply.  (ECF

10   No. 166).  Monardes filed a response (ECF No. 168), to which CALV replied (ECF No. 169).

11   In addition to his response, Monardes filed a motion for leave to file his reply.  (ECF No.

12   167).  CALV filed a response (ECF No. 170), to which Monardes replied (ECF No. 171).

13   **I.    Background**

14   This case is an Employee Retirement Income Security Act ("ERISA") action arising from

15   Fava's and Monardes's purported breaches of their fiduciary duties as CALV's CEO and vice

16   president of finance, respectively.  (ECF No. 1).  CALV is a Nevada nonprofit employee benefit

17   trust fund that provides training for entry-level and incumbent workers in the Las Vegas hospitality

18   industry.  *Id.* at 2–3.  Defendants allegedly breached their fiduciary duties when they involved

19   CALV in a business deal to start and operate the Eclipse Theater.  *See generally id.*

20   In January 2012, CALV hired Christopher Fava as vice president of food & beverage and

21   chief operating officer, and later as its chief executive officer.  *Id.* at 4–6.  Fava's position involved

22   managing CALV's assets and expenditures.  *Id.*  In April 2015, CALV hired Monardes as vice

23   president of finance and accounting.  *Id.* at 6.  Monardes' work responsibilities required him to

24   oversee program operations, which also included managing CALV's assets and expenditures.  *Id.*

25   In December of 2015, Fava notified the CALV trustees of a new training and investment

26   opportunity with the Eclipse Theater entertainment complex.  *Id.*  Fava represented that the

27   opportunity would generate $10 million in income over five years and create over 100 employment

28   opportunities for CALV students.  *See id.* at 6–7.  Based on Fava's representations, the CALV

James C. Mahan
U.S. District Judge

1    trustees delegated authority to Fava and Monardes to pursue the Eclipse Theater opportunity.  *Id.*

2    at 7.

3         On January 19, 2016, Fava and Monardes entered into a concession agreement with Eclipse

4    Theater LLC ("Eclipse agreement") on behalf of CALV.  *Id.*  CALV's capital investment, as

5    represented by Fava, was not to exceed $500,000.  *Id.*

6         On July 12, 2016, Fava and Monardes, acting on behalf of CALV, amended the Eclipse

7    agreement, allegedly without notifying the CALV trustees.  *Id.* at 8.  The amended agreement

8    required CALV to staff positions outside of the organization's training scope.  *Id.*  The amended

9    agreement also extended CALV's staffing responsibilities to Eclipse Theater's in-house restaurant,

10   21 Greens Inc. ("21 Greens").  *Id.*  CALV promised to purchase up to $250,000 in supplies and

11   equipment for 21 Greens in exchange for a guarantee that Eclipse Theater would repay CALV

12   within the first year of operation.  *Id.*  The agreement further stated that CALV would receive

13   either two percent of gross ticket revenues or $100,000 per year, whichever is greater.  *Id.*

14        CALV brought the instant suit, alleging that Fava and Monardes (1) failed to act prudently,

15   (2) failed to act for the exclusive purpose of providing benefits to participants and defraying

16   reasonable expenses, (3) failed to diversify CALV's investments, (4) failed to act in accordance

17   with CALV's governing documents, (5) engaged in prohibited transactions with parties in interest,

18   and (6) engaged in self-dealing, all in violation of ERISA.[1]  *Id.* at 16–21.  The parties now move

19   for summary judgment as to those claims.  (ECF Nos. 121; 122; 123; 124; 125).

20   **II.    Legal Standard**

21        **A.  Objections to a magistrate judge's order**

22        A district judge may affirm, reverse, or modify, in whole or in part, a magistrate judge's

23   order, as well as remand with instructions.  LR IB 3-1(b).

24

25   _____

26        [1] CALV brought a variety of other claims against the other entities.  CALV settled its claims against HKM Productions Inc., which provided video and media marketing materials for CALV.  (ECF No. 104).  The court declined to exercise supplemental jurisdiction over, and

27   consequently dismissed, CALV's state law claims against Eclipse Theater LLC, Eclipse Theater Las Vegas, Limited Partnership, and 21 Greens Inc.'s.  (ECF No. 61).  CALV filed a separate

28   action against those entities in state court.  (*See* ECF No. 139 at 12).  The court also dismissed CALV's claims against Federal Insurance Company.  (ECF No. 62).

James C. Mahan
U.S. District Judge

Magistrate judges are authorized to resolve pretrial matters subject to the district judge's review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); LR IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1-3, when it has been shown the magistrate judge's order is clearly erroneous or contrary to law."). The "clearly erroneous" standard applies to a magistrate judge's factual findings, whereas the "contrary to law" standard applies to a magistrate judge's legal conclusions. *See, e.g.*, *Grimes v. Cty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991).

A magistrate judge's finding is "clearly erroneous" if the district judge has a "definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "[R]eview under the 'clearly erroneous' standard is significantly deferential." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 623 (1993).

"An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United States v. Desage*, 2017 WL 77415, at *3, --- F. Supp. 3d ----, ---- (D. Nev. Jan. 9, 2017) (quotation omitted); *see also Grimes*, 951 F.2d at 241 (finding that under the contrary to law standard, the district judge reviews the magistrate judge's legal conclusions *de novo*).

**B.  Summary judgment**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to

James C. Mahan
U.S. District Judge

- 4 -

1    withstand summary judgment, the nonmoving party must "set forth specific facts showing that

2    there is a genuine issue for trial." *Id.*

3        When determining summary judgment, a court applies a burden-shifting analysis. "When

4    the party moving for summary judgment would bear the burden of proof at trial, it must come

5    forward with evidence which would entitle it to a directed verdict if the evidence went

6    uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the

7    absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage*

8    *Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

9        By contrast, when the nonmoving party bears the burden of proving the claim or defense,

10   the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

11   element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed

12   to make a showing sufficient to establish an element essential to that party's case on which that

13   party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving

14   party fails to meet its initial burden, summary judgment must be denied and the court need not

15   consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–

16   60 (1970).

17       If the moving party satisfies its initial burden, the burden then shifts to the opposing party

18   to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

19   *Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material

20   fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

21   626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a

22   jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

23       In other words, the nonmoving party cannot avoid summary judgment by relying solely on

24   conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,

25   1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

26   pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

27   for trial. *See Celotex*, 477 U.S. at 324.

28

**James C. Mahan**
**U.S. District Judge**

1    At summary judgment, a court's function is not to weigh the evidence and determine the

2    truth, but to determine whether a genuine dispute exists for trial.  *See Anderson v. Liberty Lobby*,

3    *Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all

4    justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the

5    nonmoving party is merely colorable or is not significantly probative, summary judgment may be

6    granted. *See id.* at 249–50.

7    The Ninth Circuit has held that information contained in an inadmissible form may still be

8    considered for summary judgment if the information itself would be admissible at trial.  *Fraser v.*

9    *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410,

10   418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to

11   produce evidence in a form that would be admissible at trial, as long as the party satisfies the

12   requirements of Federal Rules of Civil Procedure 56.")).

13   **III.   Discussion**

14   As an initial matter, the court has the inherent ability to control its docket.  *Ready Transp.,*

15   *Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010); *Atchison, Topeka & Santa Fe Ry. v.*

16   *Hercules, Inc.,* 146 F.3d 1071, 1074 (9th Cir. 1998).  Thus, the court can consider the filings before

17   the court to the extent they are helpful—and, to the extent they are not, the court may disregard

18   them—when adjudicating the substantive motions in this case.  The court finds that the preference

19   for merit-based dispositions warrants denying Fava's motion to strike (ECF No. 129), denying

20   CALV's motion to strike (ECF No. 166), and granting CALV's motion for leave to supplement

21   (ECF No. 161).  *See, e.g., Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (per curiam);

22   *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986).

23   **A.   Monardes's motion to withdraw or amend (ECF No. 135) and objection (ECF No. 163)**

24   **to the magistrate judge's minute order (ECF No. 160).**

25   Rule 36(b), by its own terms, lays out the two-part test to determine whether a party should

26   be permitted to withdraw or amend an admission: "the court may permit withdrawal or amendment

27   [1] if it would promote the presentation of the merits of the action and [2] if the court is not

28   persuaded that it would prejudice the requesting party in maintaining or defending the action on

**James C. Mahan**
**U.S. District Judge**

- 6 -

the merits." Fed. R. Civ. P. 36(b); *see also Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (citations omitted). The moving party has the burden of proof at the first step; the nonmoving party bears the burden to prove it would be prejudiced by the withdrawal or amendment. *Conlon*, 474 F.3d at 622.

The magistrate judge found that denying the motion would not preclude presentation of the merits of the action and that CALV would be prejudiced if the court granted Monardes's motion for three reasons: (1) Monardes delayed in bringing a motion to withdraw or amend, (2) discovery had closed, and (3) motions for summary judgment had been filed and briefed. *Id.* at 31–32. In sum, the magistrate judge denied the motion because he found "that [Monardes] ha[d] not [m]et [his] burden under the two prongs . . . ." *Id.* at 31.

Monardes objects, arguing that this "ruling was expressly based on the wrong burden of proof . . . ." (ECF No. 163 at 14). In particular, Monardes contends that CALV should have borne the burden to show it would be prejudiced. *Id.* The court agrees. The minute order appears to be based on a misapplication of law, and the court sustains Monardes's objection accordingly.

CALV bears the burden of showing that it would be prejudiced if the court allowed Monardes to withdraw and amend his admissions. *See Conlon*, 474 F.3d at 622. CALV did not meet its burden. To the contrary, CALV specifically argued that it "relies not only on the admitted admissions, but also gives a series of arguments based on other discovery conducted in this case." (ECF No. 164 at 8 (citing ECF No. 125 at 11)). CALV did not provide the court with any evidence or indication that Monardes's admissions prevented it from conducting discovery or altered its litigation strategy in any way. (*See* ECF Nos. 150; 163-1; 164). Nor could it so argue because— despite its consistent reference to the ten-month delay in formally moving to withdraw or amend— CALV received Monardes's untimely responses to its request for admission in October 2018, only 51 days late. (ECF Nos. 162 at 6; 164).

Thus, Monardes's objection (ECF No. 163) to the magistrate judge's minute order (ECF No. 160) is sustained. The court grants Monardes's motion to withdraw or amend. (ECF No. 135). The court will address the pending motions for summary judgment on their merits.

. . .

James C. Mahan
U.S. District Judge

- 7 -

**B.   Summary judgment**

*1. Partial summary judgment regarding defendants' fiduciary status*

Fiduciary duties under ERISA "are the 'highest known to the law.'"  *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (citation omitted).  Only ERISA fiduciaries are liable for breaching fiduciary duties.  *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1102 (9th Cir. 2004).  There are two principal types of ERISA fiduciaries relevant to this action: named fiduciaries, 29 U.S.C. § 1102(a), and "functional fiduciaries," 29 U.S.C. § 1002(21)(A).

The criteria by which a party is considered a functional fiduciary are established by 29 U.S.C. § 1002(21)(A), such as "exercising any discretionary authority or discretionary control respecting management of such plan or exercising any authority or control respecting management or disposition of its assets."  *Wright*, 360 F.3d at 1101 (quoting 29 U.S.C. § 1002(21)(A)) (quotation marks and brackets omitted).  "The bottom line is that a party is a fiduciary only to the extent the party actually exercises the alleged discretionary control or authority over plan management," *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 656–57 (9th Cir.), *cert. denied,* 140 S. Ct. 223 (2019).  To that point, the Supreme Court has explained as follows:

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) **when taking the action subject to complaint**.

*Pegram v. Herdrich,* 530 U.S. 211, 26 (2000).  Finally, courts "construe ERISA fiduciary status 'liberally, consistent with ERISA's policies and objectives.'"  *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (quoting *Ariz. State Carpenters Pension Trust Fund v. Citibank,* 125 F.3d 715, 720 (9th Cir. 1997)).

Both Fava and Monardes principally argue that they cannot be fiduciaries as it pertains to the Eclipse Theater because CALV's board of trustees was required to and did, in fact, approve each action they took.  (*See generally* ECF Nos. 130; 132). But ERISA fiduciaries "are entitled to bring suit on behalf of the [p]lan and, in this capacity, may sue co-fiduciaries for breaches of

James C. Mahan
U.S. District Judge

- 8 -

1     fiduciary duty." *Concha v. London*, 62 F.3d 1493, 1500 (9th Cir. 1995) (citing *Credit Managers*

2     *Assoc. v. Kennesaw Life and Accident Ins.,* 809 F.2d 617, 626 (9th Cir.1987)).

3        Fava and Monardes were both "expressly delegated discretion over CALV's assets,

4     administration, and management." (ECF No. 121 at 4). For instance, Fava presented a term sheet

5     to the board of trustees that he received from Nic Steele, the owner of the Eclipse Theater. (ECF

6     No. 121 at 99–103). Fava in his discretion, negotiated certain terms to "minimize[e] [CALV's]

7     risk on this project while guaranteeing net returns for the academy"; to that end, Fava "changed"

8     and sent the term sheet back to Steele. *Id.* at 99. Only then did Fava present the term sheet to the

9     board of trustees. *Id.* Likewise, Monardes admitted at his deposition that he "provide[d] feedback

10     on the concession agreement regarding—especially from the term sheet." *Id.* at 62.

11        Accordingly, both Fava and Monardes are ERISA fiduciaries as it pertains to the Eclipse

12     Theater. CALV's motion for partial summary judgment as to their fiduciary status is granted.

13                  *2. Cross-motions for summary judgment: Fava*

14        Fava effectively argues that the board of trustee's comparative fault bars CALV from

15     recovery. However, as CALV acknowledges, ERISA imposes joint and several liability on co-

16     fiduciaries, including the board of trustees. (ECF No. 124 at 3 ("Moreover, as a co-fiduciary to the

17     [board of trustees] and Monardes, Fava is jointly and severally liable for any failures they may

18     have performed.")).

19        Because the remedies ERISA establishes are only "for the benefit of the plan," the Ninth

20     Circuit has unambiguously held that "section 409 of ERISA, 29 U.S.C. § 1109 . . . cannot be read

21     as providing for an equitable remedy of contribution in favor of a *breaching fiduciary*." *Kim v.*

22     *Fujikawa*, 871 F.2d 1427, 1432 (9th Cir. 1989) (emphasis in original). At least one court has

23     applied the Ninth Circuit's reasoning in *Kim*—coupled with joint-and-several liability between co-

24     fiduciaries—to hold that comparative fault is not a viable defense in ERISA actions. *Solis v.*

25     *Tomco Auto Prod., Inc.*, No. CV 12-00618 SJO (AGRx), 2012 WL 12920838, at *4 (C.D. Cal.

26     July 10, 2012) (citing *Kim*, 871 F.2d at 1432; *Stewart v. Thorpe Holding Co. Profit Sharing Plan*,

27     207 F.3d 1143, 1157 (9th Cir. 2000)).

28

**James C. Mahan**
**U.S. District Judge**

1    The court finds this reasoning persuasive and likewise finds that CALV can enforce the

2    full judgment award against Fava alone "whether he is one-hundred percent at fault or only one-

3    percent at fault, and he would have no right to contribution." *Id.* The court now turns to each of

4    Fava's purported breaches of fiduciary duty in turn.

5        A.    *Failing to act for the exclusive purpose of CALV's plan and failing to act in*

6             *accordance with CALV's governing documents*

7    The United States Supreme Court has unambiguously held that "ERISA's principal

8    function [is] to 'protect contractually defined benefits.'" *US Airways, Inc. v. McCutchen*, 569 U.S.

9    88, 100 (2013) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 148 (1985)).

10   "The plan, in short, is at the center of ERISA" because the plan benefits and, by extension, the

11   statutory scheme are "built around reliance on the face of written plan documents." *Id.* at 100–

12   101 (quoting *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83 (1995) (quotation marks

13   omitted)). Thus, ERISA fiduciaries must "comply with a plan as written unless it is inconsistent

14   with ERISA." *Wright*, 360 F.3d at 1100. Fiduciaries do not have "an exclusive duty to maximize

15   pecuniary benefits" under the plan. *Id.* (quotation marks and citations omitted).

16   Here, CALV argues that Fava breached his duties to act for the exclusive purpose of

17   CALV's plan and to act in accordance with CALV's governing documents by entering into the

18   Eclipse Theater project because "[i]t is not the mission of CALV to open and operate risky

19   businesses or engage in venture capitalism."[2] (ECF No. 124 at 26). Thus, CALV argues that its

20   "responsibility at the Eclipse [Theater] [p]roject also necessarily violated CALV's governing

21   documents" because they fell "outside the scope of CALV's purpose," which is "to provide

22   education and training in the hospitality industry." *Id.* at 25. In response, Fava contends that

23   CALV has failed to prove what precisely its training opportunities are. (ECF No. 153 at 14–18).

24

25

26

---

27   [2] The court notes that CALV's arguments for each breach are effectively identical. (ECF

28   No. 124 at 20 ("Instead of using CALV's assets to focus exclusively on education or training that could be offered to CALV's trainees, Fava dedicated them to launch and eventually operate the Eclipse Theater.")). Thus, the court will analyze the two purported breaches simultaneously.

**James C. Mahan**
**U.S. District Judge**

1          CALV failed to produce evidence to definitively establish the precise scope of its training

2    opportunities.[3]  Thus, despite CALV's arguments to the contrary, evidence that Fava reasonably

3    interpreted CALV's trust documents is relevant.  *See Hansen v. W. Greyhound Ret. Plan*, 859 F.2d

4    779, 782 (9th Cir. 1988) ("Consistent past practice was relevant to a proper interpretation of the

5    Plan.").

6          Fava relies extensively on his good faith and his belief that the Eclipse agreement

7    resembled CALV's prior practice—the Smith Center project.  (ECF No. 123 at 25).  Trustee Mark

8    Scott testified that "every last one" of the positions CALV has in connection with its operation of

9    food & beverage services at the Smith Center were within its job classifications.  (ECF No. 124-3

10    at 10).  Conversely, Trustee D. Taylor testified that certain Eclipse Theater positions—especially

11    "[t]heater and all film-related responsibilities"—were not within CALV's job classifications.

12    (ECF No. 124-4 at 12–13).

13          A reasonable jury could find, based on the wide array of responsibilities CALV undertook

14    as part of the first amendment to the Eclipse agreement, that "Fava effectively committed CALV

15    to running the theater with the [f]irst [a]mendment." (ECF No. 124 at 11).  Alternatively, in light

16    of CALV's lack of a single list of training opportunities and its extensive involvement in the Smith

17    Center, a reasonable jury could determine that Fava's actions were consistent with CALV's prior

18    practices and, by extension, its governing documents and plan.

19          Accordingly, the court denies both Fava's and CALV's motions for summary judgment as

20    to this issue.  (ECF Nos. 123; 124).

21                                *B.  Failing to act prudently*

22          ERISA imposes a "prudent man standard of care," which requires a fiduciary to "discharge

23    his duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing

24

25          [3] CALV relies on the Culinary Union Local 226's website to show that the board of

26    trustees "have approved and established training for only 11 different job classifications, including baker's helper, bar back, bar porter, bus person, food server, guest room attendant, house

27    person/utility porter, professional cook, sommelier, steward, and wine server." (ECF No. 124 at 4 (citing *Culinary Academy of Las Vegas*, Culinary Union Local 226,

28    https://www.culinaryunion226.org/members/benefits/culinary-academy-of-las-vegas (last visited June 29, 2020).  The court declines CALV's invitation to take judicial notice of the website (ECF No. 124 at 4 n.2) because it is unauthenticated hearsay and subject to reasonable dispute.

James C. Mahan
U.S. District Judge

1    that a prudent man acting in a like capacity and familiar with such matters would use in the conduct

2    of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  "A court's

3    task in evaluating a fiduciary's compliance with this standard is to inquire 'whether the individual

4    trustees, at the time they engaged in the challenged transactions, employed the appropriate methods

5    to investigate the merits of the investment and to structure the investment.'"  *Wright*, 360 F.3d at

6    1097 (quoting *Donovan v. Mazzola,* 716 F.2d 1226, 1232 (9th Cir. 1983)).  "The focus of the

7    inquiry is 'how the fiduciary acted,' not 'whether his investments succeeded or failed.'"

8    *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008) (quoting *Donovan,* 716

9    F.2d at 1467).

10    CALV argues that Fava breached his duty of prudence by "fail[ing] to conduct appropriate

11    due diligence on the Eclipse Project . . . ."  (ECF No. 124 at 21).  Fava urges that he "performed

12    both an independent investigation, and appropriately relied on finance [Monardes] and legal

13    [CALV counsel Christensen] professionals to perform further due diligence."  (ECF No. 123 at

14    21).

15    Fava correctly notes that "securing an independent assessment from a financial advisor or

16    legal counsel is evidence of a thorough investigation."  *Howard*, 100 F.3d at 1489 (citing *Martin*

17    *v. Feilen,* 965 F.2d 660, 670–71 (8th Cir. 1992)).  However, the Ninth Circuit also noted that such

18    consultation "is not a complete defense to a charge of imprudence." *Id.* (citing *Donovan,* 716 F.2d

19    at 1234).  Instead, an independent assessment is a defense to imprudence when the fiduciary "(1)

20    investigate[d] the expert's qualifications, (2) provide[d] the expert with complete and accurate

21    information, and (3) ma[d]e certain that reliance on the expert's advice [was] reasonably justified

22    under the circumstances." *Id.*

23    Fava contends, and CALV does not dispute, that Monardes and Christensen were qualified.

24    (ECF No. 153 at 10).  Fava argues that his investigation was reasonable; his reliance on Steele's

25    projections and assumptions was reasonable; and that he replaced Steele's "assumptions with even

26    more conservative numbers, showing an abundance of caution." *Id.* at 11.  In sum, Fava believes

27    that he provided accurate information to and justifiably relied on Monardes and Christensen. *Id.*

28

James C. Mahan
U.S. District Judge

1    CALV takes issue with the independent investigation Fava conducted, tacitly arguing that

2    the second and third prongs of the *Howard* test are not met.  (ECF No. 139 at 20).  CALV further

3    argues that "Fava relies heavily on Steele's testimony about his projections, which backfires

4    because it illustrates Fava's disproportionate reliance on Steele and his failure to vet Steele's

5    projections or perform his own independent investigation or due diligence."  (ECF No. 151 at 10).

6    The court finds that there are genuine issues of material fact regarding whether Fava's

7    investigation, his reliance on Steele's projections, and his reliance on Monardes and Christensen

8    was reasonable.  The court denies summary judgment as to this claim.

9                                    *C.  Failing to diversify*

10   ERISA fiduciaries are tasked with "diversifying the investments of the plan so as to

11   minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so."

12   29 U.S.C. § 1104(a)(1)(C).  "As a general proposition, ERISA's duty to diversify prohibits a

13   fiduciary from investing disproportionately in a particular investment or enterprise."  *In re Unisys*

14   *Sav. Plan Litig.*, 74 F.3d 420, 438 (3d Cir. 1996) (citation and quotation marks omitted).  However,

15   this "duty to diversify is not measured by hard and fast rules or formulas . . . because a prudent

16   fiduciary must consider the facts and circumstances of each case."  *Id.*  As provided by the statute,

17   if a plaintiff shows that the fiduciary failed to diversify, the fiduciary is not liable if he or she can

18   show that it was prudent not to diversify.  29 U.S.C. § 1104(a)(1)(C).

19   CALV argues that Fava "committed" it to invest $750,000, which was nearly double its

20   annual budget.  (ECF No. 124 at 24).  Thus, by CALV's estimation, Fava breached his fiduciary

21   duty to diversify.  *Id.*  However, Fava argues that CALV's purpose "is not to make [a] profit, or

22   even to hold a reservation of funds" and, as a result, there is no need to diversify because it "has

23   no investment to diversify."  (ECF No. 123 at 26).  Fava also notes that the Eclipse agreement is

24   consistent with CALV's past practice, i.e., taking out a $700,000 loan in order to invest $500,000

25   in the Smith Center.  (ECF Nos. 123 at 26; 123-14 at 10).

26   Although the parties dispute whether Fava had a duty to diversify in the context of

27   employee welfare benefit plans that train—rather than compensate—its beneficiaries (*see* ECF

28   Nos. 123 at 26; 139 at 22–23), Fava is not liable if it was prudent not to diversify.  And, based on

**James C. Mahan**
**U.S. District Judge**

- 13 -

1    the evidence before the court, a jury could find that it was prudent to commit to the Eclipse

2    agreement in order to provide training opportunities to CALV's beneficiaries, as it did in

3    connection with the Smith Center.  Alternatively, a jury could find that Fava overcommitted CALV

4    in the initial Eclipse agreement and the first amendment.  A genuine issue of material fact remains

5    as to this claim, and the court denies summary judgment accordingly.

6                                   *D.  Self-dealing*

7              Judicial estoppel is an equitable doctrine that precludes a party from asserting one position

8    and then later seeking an advantage by taking a clearly inconsistent position.  *Hamilton v. State*

9    *Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citing *Rissetto v. Plumbers & Steamers*

10   *Local 343*, 94 F.3d 597, 600–01 (9th Cir. 1996); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.

11   1990)).  Courts may invoke judicial estoppel because of "'general consideration[s] of the orderly

12   administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against

13   a litigant playing fast and loose with the courts.'"  *Rissetto*, 94 F.3d at 600–01.  (quoting *Russell*

14   *v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990)).  The application of judicial estoppel not only bars

15   the assertion of inconsistent positions in the same litigation, but it also bars litigants from asserting

16   incompatible statements in different cases.  *Id.*

17             Here, CALV argued that Fava's expenditures for research were improper.  (*See generally*

18   ECF No. 124).  CALV now argues that "Fava, the executive team, other CALV employees, and

19   executives and employees of Eclipse traveled, dined at restaurants, consumed alcohol, and paid

20   for entertainment on CALV's dime," thus violating Fava's fiduciary duty to avoid self-dealing.

21   (ECF No. 124 at 26–27).  CALV also argues that "[t]he Eclipse Project **required Fava to conduct**

22   **a high level of personal investigation** because of the size of the capital outlay and his dearth of

23   experience with movie theaters."  *Id.* at 23 (emphasis added).

24             But, in the state court action against Eclipse, CALV represented that the $20,671.23 of

25   research expenses Fava incurred were Eclipse's responsibility.  (ECF No. 141-13 at 15).  And the

26   state court implicitly accepted CALV's representation when it granted CALV's motion and

27   adopted its proposed findings of fact and conclusions of law.  (*See* ECF No. 141-14 at 7–17).

28

**James C. Mahan**
**U.S. District Judge**

1   If Eclipse was responsible for the preopening expenses, then Fava was spending Eclipse's

2   assets.  And, as Fava points out, CALV has already obtained a judgment against Eclipse for the

3   full amount of its alleged damages—including the purported self-dealing damages—in the state

4   court action.  (ECF No. 141 at 21).  Indeed, CALV itself relies on the findings of fact and

5   conclusions of law from the state court action to say its $1,567,070 in damages is "conclusively

6   establish[ed] . . . as a matter of law."  (ECF No. 151 at 18–19).  Therefore, Fava's research cannot

7   be self-dealing because CALV's assets were not involved.  *See* 29 U.S.C. § 1106(b)(1) (prohibiting

8   fiduciaries from "deal[ing] **with the assets of the plan** in his own interest or for his own account."

9   (emphasis added)).

10   Accordingly, the court grants summary judgment in Fava's favor as to the self-dealing

11   claim.

12   *E.   The HKM transaction*

13   Fiduciaries breach their duties under ERISA if they enter into a transaction that "constitutes

14   a direct or indirect transfer to, or use by or for the benefit of a party in interest, of any assets of the

15   plan." 29 U.S.C. § 1106(a)(1)(D).  A party in interest includes the spouse of an employee of the

16   plan.  *Id.* § 1002(14)(A), (F), (15).  However, to be a violation of § 1106, the compensation that a

17   party in interest received must be "excessive."  *See Steen v. John Hancock Mut. Life Ins. Co.*, 106

18   F.3d 904, 918 (9th Cir. 1997) (citing *Concha v. London,* 62 F.3d 1493, 1504 (9th Cir.1995)

19   (holding that allegations that non-fiduciary attorneys, *inter alia,* received "excessive compensation

20   for legal services" was sufficient to state claim for § 1106 violation); *Nieto v. Ecker,* 845 F.2d 868,

21   873 (9th Cir.1988) (same)).

22   Here, CALV argues that "Fava caused CALV to enter a prohibited transaction by entering

23   a deal with HKM while Yuti Williams [whose husband worked at HKM] was employed by

24   CALV." (ECF No. 139 at 26).  But the uncontroverted evidence before this court—which CALV

25   summarily dismisses as "immaterial" (ECF No. 139 at 27)—proves that "HKM charged CALV

26   below fair market value for its services" (ECF No. 153 at 20).  Because HKM charged less than

27   fair market value, its compensation was not excessive.  Thus, summary judgment is appropriate in

28   Fava's favor as to the HKM transaction.

James C. Mahan
U.S. District Judge

*3. Cross-motions for summary judgment: Monardes*

The court finds that the analysis regarding Monardes's purported breaches of fiduciary duty is the same as Fava's. Monardes's principal argument is, once again, that he was not a fiduciary as to the Eclipse agreement. The court has already dispensed with this argument as unpersuasive. Further, Monardes is liable jointly and severally with Fava as a breaching co-fiduciary. 29 U.S.C. § 1105; s*ee Stewart*, 207 F.3d at 1157; *Solis*, 2012 WL 12920838, at *4. "And [Monardes] had the affirmative duty to prevent [Fava] from breaching his fiduciary duties." *Stewart*, 207 F.3d at 1157 (citations omitted).

Monardes, as vice president of finance and accounting, was expressly responsible for the "oversight of all insurance and financial matters such as asset management, accounting operations, budget preparation, legal compliance, annual audit preparation, and financial planning." (ECF No. 121-1 at 87). Monardes admitted at his deposition that he "provide[d] feedback on the concession agreement regarding—especially from the term sheet." (ECF No. 121 at 62). Thus, Monardes oversaw and was familiar with the financial aspect of the Eclipse agreement. And Monardes fails to present evidence to contravene these facts. (*See generally* ECF Nos. 122; 137). Thus, Monardes is liable to the same extent as Fava.

Accordingly, the court—having found no breach of fiduciary duty as it pertains to the alleged self-dealing and HKM transactions—grants summary judgment in Monardes's favor as to those claims. But, as explained above, there remain genuine and material issues regarding whether Fava's or, by extension, Monardes's other actions were, in fact, breaches of their fiduciary duties. The court denies all motions for summary judgment as to the remaining breach-of-fiduciary-duty claims.

*4. Damages*

Fava argues that he "should not be responsible for CALV's spending after the commencement of his leave of absence" because he "had no control over . . . disbursements made after the commencement of his leave." (ECF No. 141 at 22). Similarly, Monardes argues that his fiduciary liability ceased once CALV placed him on administrative leave in October 2016 because, from thereon out, he "had <u>no</u> authority or control over any of the plan assets and could not even

1   perform any ministerial functions related to the same." (ECF No. 122 at 11–12 (emphasis in
2   original)).

3   Pursuant to 29 § 1109(b), "[n]o fiduciary shall be liable with respect to a breach of fiduciary
4   duty under this subchapter if such breach was committed before he became a fiduciary **or after he**
5   **ceased to be a fiduciary**." 29 U.S.C. § 1109(b) (emphasis added).

6   When CALV terminated Fava and Monardes, their status as fiduciaries was also
7   terminated. Monardes was placed on administrative leave in October 2016, (ECF No. 122 at 4),
8   and Fava was terminated in November 2016, (ECF No. 141 at 22). CALV continued to make
9   disbursements and invest in the Eclipse agreement thereafter. CALV may recover its losses from
10   Fava and Monardes only to the extent such losses were sustained while they were fiduciaries.

11   The court grants Fava and Monardes's motions for summary judgment in part as to
12   damages sustained after they ceased to be fiduciaries and denies CALV's motion for summary
13   judgment in part accordingly. (ECF Nos. 122; 123; 124; 125).

14   **IV.   Conclusion**

15   Accordingly,

16   The court grants Monardes's motion for leave to file reply (ECF No. 167), CALV's motion
17   for leave to supplement (ECF No. 161), Monardes's objection (ECF No. 163), and Monardes's
18   motion to amend or withdraw (ECF No. 135). The court also overrules the magistrate judge's
19   minute order (ECF No. 160), denies CALV's motion to strike (ECF No. 166), and denies Fava's
20   motion to strike (ECF No. 129).

21   The court finds that there is not a genuine issue of material fact regarding Fava and
22   Monardes's status as ERISA fiduciaries in relation to the Eclipse Theater, and consequently grants
23   CALV's motion for partial summary judgment. (ECF No. 121).

24   However, neither Fava nor Monardes breached his duty to avoid self-dealing because
25   CALV's own judicial admissions conclusively establish that Eclipse was liable for the preopening
26   expenses, including the research expenses Fava incurred. Neither Fava nor Monardes breached
27   his duty to avoid transactions with parties in interest because HKM's services were rendered for
28   below market value. The court denies CALV's motions (ECF Nos. 124; 125) in part as to these

James C. Mahan
U.S. District Judge

- 17 -

1    breaches of fiduciary duty and, instead, grants partial summary judgment in Fava and Monardes's
2    favor.
3        The court grants both Fava and Monardes's motions for summary judgment (ECF Nos.
4    122; 123) to the extent that Fava and Monardes's liability is limited to the losses CALV incurred
5    while they were fiduciaries.  To the extent CALV's motions argue otherwise, they are denied.
6        The court finds that there are genuine issues of material fact regarding whether Fava and
7    Monardes failed to act for the exclusive purpose of CALV's plan, failed to act in accordance with
8    CALV's governing documents, failed to act prudently, and/or failed to diversity.  The court denies
9    all motions for summary judgment as to these breach-of-fiduciary-duty claims.
10        IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Monardes's motion for
11    leave to file reply (ECF No. 167) be, and the same hereby is, GRANTED *nunc pro tunc*.
12        IT IS FURTHER ORDERED that CALV's motion for leave to supplement (ECF No. 161)
13    be, and the same hereby is, GRANTED.
14        IT IS FURTHER ORDERED that Monardes' objection (ECF No. 163) be, and the same
15    hereby is, SUSTAINED.
16        IT IS FURTHER ORDERED that the magistrate judge's minute order (ECF No. 160) be,
17    and the same hereby is, OVERRULED.
18        IT IS FURTHER ORDERED that Monardes's motion to amend or withdraw (ECF No.
19    135) be, and the same hereby is, GRANTED.
20        IT IS FURTHER ORDERED that CALV's motion to strike (ECF No. 166) be, and the
21    same hereby is, DENIED.
22        IT IS FURTHER ORDERED that Fava's motion to strike (ECF No. 129) be, and the same
23    hereby is, DENIED.
24        IT IS FURTHER ORDERED that CALV's motion for partial summary judgment (ECF
25    No. 121) be, and the same hereby is, GRANTED.
26        IT IS FURTHER ORDERED that Monardes's motion for partial summary judgment (ECF
27    No. 122) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the
28    foregoing.

James C. Mahan
U.S. District Judge

- 18 -

1        IT IS FURTHER ORDERED that CALV's motion for summary judgment against

2    Monardes (ECF No. 125) be, and the same hereby is, DENIED.

3        IT IS FURTHER ORDERED that Fava's motion for summary judgment (ECF No. 123)

4    be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

5        IT IS FURTHER ORDERED that CALV's motion for summary judgment against Fava

6    (ECF No. 124) be, and the same hereby is, DENIED.

7        DATED July 15, 2020.

8

9    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Mahan
U.S. District Judge

- 19 -